# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

INLAND DREDGING COMPANY, L.L.C.,

      Plaintiff,

v.                                              Case No: 5:04cv280-RH/WCS

THE PANAMA CITY PORT
AUTHORITY, etc.,

      Defendant.

_____/

## ORDER DENYING SUMMARY JUDGMENT MOTIONS

      This action arises from a contract for dredging of an industrial port. The contractor, plaintiff Inland Dredging Company, L.L.C., asserts it encountered debris far in excess of what could reasonably be expected at an industrial port in general or at this port in particular. The owner, defendant The Panama City Port Authority, asserts the contract placed the risk of abnormal site conditions on the contractor, and that, in any event, the debris encountered here did not significantly exceed what should have been expected. Each side has moved for summary judgment. I conclude that the contract placed the risk of abnormal conditions on

the contractor only to the extent they were known or should have been discovered from an inquiry the contractor was required to undertake. I conclude further that whether the conditions here were sufficiently abnormal, and whether any such abnormality should have been discovered through a required inquiry, are disputed issues of fact that cannot properly be resolved by summary judgment. I deny the motions.[1]

The contract included a section specifically addressing abnormal site conditions. It provided:

> 4.03   Differing Subsurface or Physical Conditions
>
> > A.   Notice: If CONTRACTOR believes that any subsurface or physical condition at or contiguous to the Site that is uncovered or revealed either:
> >
> > > 1.   Is of such nature as to establish that any *technical data* on which CONTRACTOR is entitled to rely as provided in paragraph 4.02 *is materially inaccurate*; or
> > >
> > > 2.   Is of such a nature as to require a change in Contract Documents; or
> > >
> > > 3.   Differs materially from that shown or indicated in the Contract Documents; or
> > >
> > > 4.   *Is of an unusual nature, and differs materially from*

---

[1] This matter thus will go to trial. No purpose would be served at this stage by a comprehensive recitation of the relevant contractual provisions, governing law, or evidence included in this record. This order provides, instead, only a brief summary of the basis for denying the summary judgment motions.

>    *conditions ordinarily encountered and generally recognized as inherent in work of the character provided in the Contract Documents*;
>
> then CONTRACTOR shall, promptly after becoming away thereof and before further disturbing the subsurface or physical conditions or performing any Work in connection therewith (except in an emergency . . .), notify OWNER and ENGINEER in writing of such condition. . . .
>
> . . . .
>
> C.   Possible Price and Times Adjustments
>
>    1.   The Contract Price or the Contract Times, or both, will be equitably adjusted to the extent that the existence of such differing subsurface or physical condition causes an increase or decrease in CONTRACTOR's cost of, or time required for, performance of the Work; . . . .
>
>    2.   CONTRACTOR shall not be entitled to any adjustments in the Contract Price or Contract Times if:
>
>       a.   CONTRACTOR *knew of the existence of such conditions* at the time CONTRACTOR made a final commitment to OWNER in respect of Contract Price and Contract Times by the submission of a Bid or becoming bound under a negotiated contract; or
>
>       b.   The existence of such condition *could reasonably have been discovered* or revealed as a result of any examination, investigation, exploration, test, or study of the Site and contiguous areas *required by the Bidding Requirements or Contract Documents* to be conducted by or for CONTRACTOR prior to CONTRACTOR's making such final commitment; or

      c.      CONTRACTOR failed to give the written notice within the time and as required by paragraph 4.03.A.

Dep. ex. 3 at 110-11 (emphasis added).

Nothing in the remainder of the comprehensive contract documents overrode these abnormal site provisions. On balance, then, the contract required an equitable adjustment of the contract price if (1) site conditions were of an unusual nature and differed materially from conditions ordinarily encountered and generally recognized as inherent in work of this character, and (2) the contractor did not know of the conditions and could not have discovered them through any test or inquiry the contract documents required the contractor to undertake.[2]

The evidence in this record is far from compelling on the question whether the actual conditions at this site were of an unusual nature and differed materially from conditions ordinarily encountered and generally recognized as inherent in

---

[2] This abbreviated description omits other provisions that need not be addressed for purposes of the summary judgment motions. Thus, for example, the contract required notice, but the Port does not seek summary judgment on the ground that notice was not given. The contract also referred to technical data on which Inland was entitled to rely. The parties dispute with vigor whether Inland was entitled to rely on a report prepared by researchers associated with Florida State University. That report included both detailed factual information regarding obstructions and disclaimers about the comprehensiveness of the data. The motions for summary judgment would be denied in any event, and I thus need not address at this juncture whether that clause, standing alone, does or does not apply on these facts.

work of this character. There is enough on each side, however, to preclude resolution of this issue by summary judgment.

On Inland's side, its dredge boat captain said the size and magnitude of the debris encountered on this job were more than on any job he had ever been on (Melton dep. at 77, lines 7-10), and that he had never encountered "big concrete blocks like that." (*Id.* at 86, lines 2-4.) Inland's vice president said the debris was far more than would have been expected from the reports Inland was provided. (Valentine dep. at 22, lines 15-17.) Inland's owner said the magnitude of the debris at this site was "quite different" from anything he had experienced, that this was not incidental to the job, and that anyone "familiar with the dredge process" would understand this. (Mohead dep. at 30-31.) Inland's operations manager said there was a "whole lot" more debris than Inland anticipated. (Cox dep. at 20, lines 5-9.)[3] Finally, it apparently is undisputed that at least some unusual activity—the sinking of materials and debris from ships that were being taken out of service—had occurred at this port some decades back. A retired terminal and dock manager at this port referred to this as the "cutting up" of ships and said this produced conditions that were out of the ordinary for a port of this type. (Love

---

[3] The Port questions the experience and expertise of these Inland witnesses. For the most part, however, the Port's criticisms go to weight, not admissibility, and thus are not sufficient to preclude reliance on the testimony for summary judgment purposes.

*Case No: 5:04cv280-RH/WCS*

*Page 6 of 7*

dep. at 43-44.)[4]

On the other side, the Port's project engineer asserted that "conditions encountered at the Port Panama City [were] not materially different from any other port with a history such as Port Panama City." (Dep. ex.29, July 13, 2004 Letter from Cronwell to Mohead.) Another engineer testified he thought the debris that was encountered was not "abnormal." (Tabar dep. at 105-06.) A dredge contractor hired by the Port to assist with the project after Inland complained of abnormal conditions said he would "expect to see" at this port conditions of the type he found. (Harders dep. at 69, lines 15-20).

In sum, whether the conditions at this site were sufficiently abnormal to invoke the clause requiring an equitable adjustment of the contract price is a disputed issue of fact.

The same is true of the question whether Inland should have discovered any abnormality through an inquiry it was required to undertake. The contract did not leave Inland free to ignore reasonably available information regarding site conditions. But neither did the contract require Inland to undertake its own

---

[4] The Port does not deny that debris from ships was sunk at this location some decades back, but the Port emphasizes that whole ships were not scuttled, and the Port questions the connection between these historic facts and the conditions of which Inland now complains. The magnitude and materiality of this debris and its relationship to the current dredging operation are issues that cannot be conclusively resolved on this limited record.

scientific testing.  This approach made sense:  a reasonable owner might choose to perform tests, allow bidders to rely on them, and relieve bidders of the risk of unknown and undiscoverable abnormal conditions, in the expectation that this would persuade bidders not to increase their bids to cover the risk of such conditions.  *See, e.g., Jacksonville Port Auth. v. Parkhill-Goodloe Co.*, 362 So. 2d 1009, 1012-13 (Fla. 1st DCA 1978) (*quoting Condon-Cunningham, Inc. v. Day*, 22 Ohio Misc. 71, 258 N.E.2d 264 (Ohio 1969)).  This record does not conclusively resolve the factual question whether the actual condition of this site could or should have been discovered through reasonable inquiry.

For these reasons,

IT IS ORDERED:

The parties' motions for summary judgment (documents 39 and 41) are DENIED.

SO ORDERED this 29th day of August, 2005.

s/Robert L. Hinkle
Chief United States District Judge
